## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE: LARRY KLAYMAN                Case No. 3:25-mc-20-JRK

_____

## O R D E R

### I. Status

This matter is before the Court on the Petition Pursuant to Local Rule 2.04 of Larry Elliot Klayman to the Chief Judge Concerning Suspension Order of the Supreme Court of Florida and Motion to Stay (Doc. No. 1; "Petition"), filed December 16, 2025. By Order entered December 30, 2025 (Doc. No. 2), the Honorable Marcia Morales Howard, Chief United States District Judge, Middle District of Florida, designated the undersigned to determine the petition. See Rule 2.04(b)(2), Local Rules, Middle District of Florida ("Local Rule(s)").

On November 6, 2025, the Florida Supreme Court suspended Mr. Klayman from the practice of law in Florida for two years. See Petition at Ex. A Ex. 1.[1] Through the Petition, Mr. Klayman requests that this Court decline to impose reciprocal discipline and further requests that the Court "stay any consideration of reciprocal discipline pending his ongoing challenges" that are detailed in the Petition. Id. at 1.

---

[1] The Petition contains Exhibits A, B, and C. Some of those exhibits themselves contain exhibits that are numbered, making the citations difficult to follow. Hereinafter, documents attached to the Petition are cited only when not available elsewhere.

Before addressing the substance of the Petition, the Court considers the request to stay consideration of the matter of reciprocal discipline. A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997) (citation omitted). Important considerations when determining whether to stay a matter pending the resolution of related proceedings in another forum include the scope of the stay and the reasons for it. Ortega Trujillo v. Conover & Co. Comm'n Inc., 221 F.3d 1262, 1264 (11th Cir. 2000). Factors to consider include "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 426 (2009) (quotation and citation omitted).

First, Mr. Klayman argues that the matter should be stayed, "at a minimum," pending a motion for rehearing he filed with the Florida Supreme Court. Petition at 3; see id. at Ex. A. On January 23, 2026, however, the Florida Supreme Court denied Mr. Klayman's request for a rehearing. See Order, No. 2023-1219 (Fla. Jan. 23, 2026).[2] Mr. Klayman has since filed a motion that

---

[2]    Despite having the burden of proof, Mr. Klayman has not filed the record of the disciplinary proceedings that took place before the Florida Supreme Court. The undersigned has reviewed the entirety of, and takes judicial notice of, the Florida Supreme Court docket for the disciplinary proceeding: No. 2023-1219 (Fla. 2023). Citations of this docket hereinafter appear as "Fla.," followed by the title and date of the filing cited. Even if not specifically cited, all of the thousands of pages of documents comprising the Florida Supreme Court disciplinary

remains pending with the Florida Supreme Court seeking "issuance of findings of fact and conclusions of law." See Fla. Motion Feb. 3, 2026.

Second, Mr. Klayman contends the discipline matter taken up by the Florida Supreme Court stems in part from an opinion entered September 15, 2022 by the District of Columbia Court of Appeals[3] ("2022 DCCA opinion") that Mr. Klayman has challenged in a multitude of ways, and which has resulted in stays of various proceedings pending his challenges. See Petition at 3. Of note, he has at least two "collateral" civil actions pending in state court,[4] and an unknown number of pending reciprocal disciplinary proceedings ranging from this Court (see In re Klayman, 3:22-mc-14-JRK) to the Supreme Court of Pennsylvania, to the U.S. Court of Appeals for the Fifth Circuit and the U.S. District Court for the Northern District of Texas.[5] See Petition at 3. Mr. Klayman correctly points out that this Court and others have stayed

_____

proceeding were considered.

[3]    The District of Columbia Court of Appeals is the equivalent of a state supreme court in the District of Columbia. See Website for District of Columbia Court of Appeals, https://www.dccourts.gov/court-of-appeals (last visited February 13, 2026). The record of the District of Columbia disciplinary proceedings discussed herein is available on this Court's docket in In re Larry Klayman, No. 3:22-mc-14-JRK, Notice (Doc. No. 8), filed February 7, 2023.

[4]    See Klayman v. Sataki, No. 24-cv-226 (D.C. Ct. App.); Klayman v. Sataki, No. 50-2022-CA-010491 (Fla. 15th Cir.).

[5]    This Court also has a separate reciprocal disciplinary matter pending in which Mr. Klayman is seeking to avoid reciprocal discipline concerning unrelated facts and discipline imposed on August 7, 2025 by the District of Columbia. See In re Klayman, No. 3:25-mc-15-JRK, Petition (Doc. No. 1).

consideration of reciprocal discipline proceedings stemming from the 2022 DCCA opinion pending the outcome of the appeal in <u>Klayman v. Sataki</u>, No. 24-cv-226 (D.C. Ct. App.). <u>See</u> Order (Doc. No. 16), No. 3:22-mc-14-JRK. Oral argument has been set in that matter but not yet held. <u>See</u> <u>Klayman v. Sataki</u>, No. 24-cv-226 (D.C. Ct. App.), Order entered Oct. 30, 2025.

The Court declines to stay the instant disciplinary matter for three main reasons. First, the Florida Supreme Court suspension was only partially based on the facts leading to the 2022 DCCA opinion. The Florida Bar in initiating its disciplinary proceeding before the Florida Supreme Court brought two counts: one stemming from a District of Columbia Court of Appeals Order dated June 11, 2020 imposing a 90-day suspension ("2020 DCCA opinion"), and a second stemming from the 2022 DCCA opinion imposing an 18-month suspension. <u>See</u> Fla. Compl. Aug. 29, 2023. Given that this Court's other disciplinary proceeding stay encompassed only the 2022 DCCA opinion, the argument that the instant matter should be stayed for the same reasons is not persuasive.[6]

Second, Mr. Klayman has a demonstrated pattern of failing to keep this Court properly informed of the status of disciplinary proceedings. Although Mr. Klayman had a pending case in this Court at the very time the 2020 DCCA opinion was entered (June 11, 2020), the Court's attorney admission records do

---

[6] Moreover, other courts have declined to stay reciprocal disciplinary proceedings based on the litigation resulting from the 2022 DCCA opinion and suspension. <u>See, e.g.</u>, Order of Suspension, No. 22-8521 (D.C. Cir. June 6, 2023); Fla. Order Nov. 6, 2025.

not reflect that he notified this Court of his suspension in the District of Columbia. Furthermore, the docket for the case that was pending in this Court at the time reflects that Mr. Klayman moved to withdraw from representing his client in the weeks following the suspension, citing as a reason only a "conflicting situation" with his client. Zimmerman v. Buttigieg, No. 8:20-cv-1077-CEH-CPT (Doc. No. 21, filed June 29, 2020). Mr. Klayman's motion was denied without prejudice for failure to comply with the Local Rules. Id. (Doc. No. 22, entered June 29, 2020). Almost four months later, Mr. Klayman renewed the motion to withdraw, this time citing "a conflict of interest with his client." Id. (Doc. No. 28, filed October 27, 2020). Eventually, after a hearing, Mr. Klayman was permitted to withdraw. See id. (Doc. No. 34, entered November 20, 2020). Likely because Mr. Klayman failed to notify the Court of his suspension in 2020, this Court never had occasion to consider whether suspension was necessary at that time despite the then-applicable Local Rule 2.04(b) (2009) requiring an automatic suspension absent the filing of a petition seeking relief from the rule.

Moreover, regarding the 2022 DCCA opinion and suspension, the undersigned stayed this Court's reciprocal disciplinary proceeding on February 6, 2023 with instructions regarding Mr. Klayman's duties to inform the Court of various developments. See No. 3:22-mc-14-JRK (Doc. No. 7). The undersigned entered an Order to Show Cause in February 2025 outlining Mr. Klayman's

failure to keep the Court informed of the status of the proceedings. See id. (Doc. No. 9, entered February 14, 2025). Although the Order to Show Cause was discharged on June 30, 2025, the undersigned observed that Mr. Klayman's explanation "pushe[d] the bounds of reasonableness," and the undersigned also detailed a material misrepresentation Mr. Klayman had made in response to the Order to Show Cause. See id. (Doc. No. 16). The undersigned, while allowing the matter to remain stayed pending the outcome of the appeal in Klayman v. Sataki, No. 24-cv-226 (D.C. Ct. App.), ordered Mr. Klayman to update the Court on the status of that appeal every sixty days. See No. 3:22-mc-14-JRK (Doc. No. 16, entered June 30, 2025, at 6). Mr. Klayman's last status report was dated November 10, 2025. See id. (Doc. No. 20). His next one is overdue. In sum, the Court does not have confidence in Mr. Klayman's willingness or ability to keep the Court informed of matters relating to his disciplinary proceedings.

Since the undersigned's 2023 stay of reciprocal disciplinary proceedings in 3:22-mc-14-JRK, Mr. Klayman has entered appearances as counsel of record in at least four cases in this Court. See Petition at 11 (summarizing cases). He argues he and his clients "will be prejudiced without a stay." Id. But, Mr. Klayman's conduct in this Court has been cause for concern among judges of this Court. See, e.g., Loomer v. Maher, No. 5:24-cv-625-JSM-PRL, (Doc. No. 158, Order entered December 4, 2025) (addressing problematic deposition conduct), (Doc. No. 178, Order entered January 15, 2026) (outlining Mr. Klayman's

repeated sanctions for violations of court rules "both in the Middle District and throughout the United States" and referring him to this Court's grievance committee and the Florida Bar). Allowing a stay of this disciplinary proceeding could result in his continued problematic conduct.

Third, Mr. Klayman's bar membership status has recently changed such that expeditious consideration of the instant reciprocal disciplinary proceeding is the appropriate action. A lawyer must be a member of The Florida Bar to be a member of this Court's bar. See Rule 2.01(b)(1), Local Rules, Middle District of Florida. Mr. Klayman has now been suspended from The Florida Bar, so he no longer meets this Court's admission requirements. See In re Kandekore, 140 F. App'x 848, 850 (11th Cir. 2005) (holding when a lawyer was "no longer a member of the Florida Bar, and state bar membership is required for an attorney to be reinstated to the district court bar, the district court did not err by denying his petition for reinstatement"). Mr. Klayman's continued practice in this Court during any stay would be without an underlying requirement for admission to the Court's bar. This too counsels against a stay.

For all of the foregoing reasons—and finding that none of the Nken factors favor Mr. Klayman, see 556 U.S. at 426—the Court declines to stay this matter.[7]

---

[7]     Mr. Klayman also seeks a hearing on the discipline issue, citing Local Rule 2.04(a) (addressing the Court's general discipline authority). But, the Court is proceeding under the reciprocal discipline aspect of Local Rule 2.04, subsection (b)(2), which does not

## II. Discussion

The Florida Supreme Court succinctly summarized the facts underlying

their disciplinary proceeding:[8]

### Referee's Findings as to Count One

> The referee made the following factual findings regarding Count One of the Bar's complaint, which addressed Klayman's 90-day suspension imposed by the D.C. Court of Appeals in 2020.
>
> In 1994, Klayman founded an organization called Judicial Watch and served as its in-house counsel until 2003. During his time with the organization, an employee named Sandra Cobas complained to Judicial Watch about employment conditions, and Klayman provided legal advice to Judicial Watch about Cobas' complaints. Cobas later filed a lawsuit against Judicial Watch in the Florida court system, but her case was dismissed. Then, without seeking consent from Judicial Watch to represent Cobas, Klayman entered an appearance on Cobas' behalf and filed a motion to vacate the court's dismissal order. He later filed a notice of appeal and an appellate brief on Cobas' behalf.
>
> In a second case, Klayman, acting as Judicial Watch's chairman and general counsel in 2002, solicited donations for the organization from a donor named Louise Benson. Benson later sued Judicial Watch to recover her donated money, and Klayman entered an appearance on her behalf—again without seeking consent from Judicial Watch.
>
> In a third case, Klayman prepared a representation agreement on behalf of Judicial Watch in 2001 to

---

contemplate or require a hearing. The undersigned does not deem it necessary to hold a hearing.

[8]    The Florida Supreme Court referred its disciplinary matter to a referee, who submitted a report with factual findings that the Court adopted. See Fla. Order of Referral, entered Sept. 5, 2023; Report of Referee, filed May 17, 2024.

represent a new client named Peter Paul. Paul later sued Judicial Watch for breach of the agreement, and Klayman entered an appearance on Paul's behalf—again without seeking consent from Judicial Watch.

Klayman's conduct in the above three cases was found to be violative of D.C. Rule of Professional Conduct 1.9 (Conflict of Interest) and resulted in Klayman being suspended for 90 days in D.C.[9]

### Referee's Findings as to Count Two

The referee made the following factual findings regarding Count Two of the Bar's complaint, which addressed Klayman's 18-month suspension imposed by the D.C. Court of Appeals in 2022. In 2010, Klayman began representing Elham Sataki in a sexual harassment suit. Klayman and Sataki agreed to a 40% contingency fee agreement with no retainer, but Klayman later unilaterally increased his fee to 50%. When negotiations with the defendant failed, Klayman encouraged Sataki to move from D.C. to Los Angeles, and he paid for her relocation and living expenses. He and Sataki agreed that he would be reimbursed out of any award she won in the case, in addition to his fee.

Klayman filed a civil suit on Sataki's behalf against her supervisors and the individual accused of harassing her, but while Sataki wanted the matter to be handled quietly, Klayman engaged in a public strategy designed to draw attention to the case. He sued both the governing board of the company and the Broadcasting Board of Governors, which included several prominent figures, despite Sataki insisting that she wanted to focus only on her supervisors and the individual who harassed her. Klayman also wrote numerous public articles about the case in which he revealed

---

9       See, e.g., In re Klayman, 228 A.3d 713 (D.C. Ct. App. 2020). Again, despite having the burden of proof, Mr. Klayman has failed to file the record of this disciplinary proceeding. The undersigned has reviewed the entirety of, and takes judicial notice of, the record: In re Klayman, 18-BG-0100 (D.C. Ct. App.).

confidential information. Sataki was against publication of the articles, but she agreed to the public approach after Klayman told her it would be beneficial to her case.

In April 2010, Klayman began to repeatedly express strong feelings for Sataki. When Sataki told him they could only be friends, he persisted. He told her that his feelings for her rendered him nonfunctional as a lawyer and that she would get better legal representation from someone else. Sataki wrote Klayman a letter telling him to withdraw the remaining lawsuit, but Klayman did not dismiss the entire case and continued acting on Sataki's behalf. Sataki wrote Klayman another letter stating that his services had been terminated. She later wrote him again and reiterated that he was not representing her in any capacity, but he sent her a reply stating that he could not allow her legal rights to be lost. He then filed a notice of appeal in Sataki's civil case without speaking to her about whether she wanted to file an appeal.

During the hearing before the referee, Klayman denied having romantic intentions toward Sataki and insisted that he had consulted with Sataki about all actions taken on her case. Klayman also disputed the existence of a contingency fee agreement, and he denied pressuring Sataki to pursue publicity. This conduct was found to be violative of numerous D.C. Rules of Professional Conduct and resulted in Klayman being suspended for a period of 18 months in D.C.[10]

---

[10]     See, e.g., In re Klayman, 282 A.3d 584, 594-97 (D.C. Ct. App. 2022). In the 2022 disciplinary matter, Mr. Klayman was found to have violated six rules of professional conduct:

- The rule against conflict of interest, D.C. R. Prof. Cond. 1.7(b)(4);
- The rule requiring a lawyer to "abide by a client's decisions concerning the objectives of representation" and to "consult with the client as to the means by which they are to be pursued," D.C. R. Prof. Cond. 1.2(a);
- The rule against revealing client confidences or secrets and against using client confidences or secrets for the advantage of the lawyer, D.C. R. Prof. Cond. 1.6(a)(1) and (a)(3);

Fla. Order entered Nov. 6, 2025, at 3-6. The Florida Supreme Court found that Mr. Klayman was due to be disciplined pursuant to Rule Regulating The Florida Bar 3-4.6 (Discipline by Foreign or Federal Jurisdiction; Choice of Law). Fla. Order entered Nov. 6, 2025, at 2. According to the Court, "the D.C. suspension orders constitute conclusive proof of misconduct for purposes of a Florida Bar discipline proceeding." <u>Id.</u> Imposing reciprocal discipline for the same violations, the Florida Supreme Court found a number of aggravators that justified a two-year suspension. <u>See</u> <u>id.</u> at 7-8, 22-23.

When, as here, a court "has promulgated rules providing that general admission to practice in that court is conditioned upon admission to the Florida Bar" and "further provide that state disbarment may be grounds for suspension from the Middle District [of Florida] bar," an attorney may be suspended from the federal bar "provided that an intrinsic consideration of the record underlying the predicate state disbarment does not reveal [certain] infirmities." <u>Greer's Refuse Serv. v. Browning-Ferris Indus. of Del.</u>, 843 F.2d 443, 446-47

---

- The rule requiring a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation," D.C. R. Prof. Cond. 1.4(b);
- The rule requiring a written fee agreement in a contingent-fee case, D.C. R. Prof. Cond. 1.5(c); and
- The rule requiring a lawyer to withdraw when discharged, D.C. R. Prof. Cond. 1.16(a)(3).

In imposing the eighteen-month suspension and fitness requirement, the D.C. suspension court noted that Mr. Klayman had engaged in "many serious disciplinary violations." <u>Id.</u> at 597.

(11th Cir. 1988). A state-court suspension "should be accorded federal effect" unless the petitioning lawyer demonstrates from an "intrinsic consideration" of the state record that:

> (1) the state proceeding lacked due process; (2) the proof in the state proceeding was so infirm "as to give rise to a clear conviction on [this Court's] part that [it] could not, consistently with [its] duty, accept as final the conclusion" of the state court; or (3) "some other grave reason exist[s] which should convince [this Court] that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon [this Court] not to [discipline] except upon the conviction that, under principles of right and justice, [it is] constrained so to do."

Matter of Calvo, 88 F.3d 962, 966-67 (11th Cir. 1996) (quoting Selling v. Radford, 243 U.S. 46, 51 (1917)).

The first reason for another court to decline to suspend a lawyer after a state court imposed suspension—lack of due process—is "narrowly defined . . . as 'want of notice or opportunity to be heard.'" Id. (quoting Selling, 243 U.S. at 51). Regarding the second reason—infirm proof in the state proceeding—"relaxed rules of evidence apply" in disciplinary proceedings." Id.; see also The Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla. 1986) (stating "[i]n bar discipline cases, hearsay is admissible and there is no right to confront witnesses face to face" and "[t]he referee is not barred by technical rules of evidence") (cited with approval in Calvo, 88 F.3d at 967). Finally, to rely on the

third reason, the Court must be convinced that a "grave injustice" occurred. Calvo, 88 F.3d at 968.

Petitioner bears the burden "to show good cause why he should not be disbarred," and this Court "is not required to conduct a de novo trial in the first instance of [the lawyer's] fitness to practice law." Id. at 967 (quotation and citation omitted). Rather, the Court "must determine whether the record underlying the predicate state [discipline] reveal[s] the kind of infirmities identified [above.]" Id. (quotation and citation omitted). When, as here, the Florida suspension is itself predicated on another jurisdiction's suspension, the Court must "give intrinsic consideration to" both proceedings. Greer's, 843 F.2d at 447.

In contending he should not be disciplined by this Court, Mr. Klayman relies heavily on his Motion for Rehearing filed with the Florida Supreme Court, incorporating this motion by reference at multiple points in his petition. See Petition at 2, 5, 6-8, 10, 12. As noted, the Florida Supreme Court denied that motion on January 23, 2026. See Fla. Order, Jan. 23, 2026. Mr. Klayman mainly focuses on rehashing arguments—discussed in detail below—that were made and rejected in the Florida Supreme Court and the equivalent state proceedings in the District of Columbia.

First, Mr. Klayman argues "there was a significant denial of due process because the Florida Suspension Order is time-barred." Petition at 5. According

to Mr. Klayman, the years-long delay in bringing the disciplinary matters should result in proceedings being "time-barred now . . . under both the doctrines of statute of limitations and laches." Id. Mr. Klayman cites no authority and hardly expounds upon this argument in his Petition, other than to say that the Florida Office of Bar Counsel failed to act on a complaint for years, and also that he was denied the proper discovery throughout the underlying proceedings. Id. at 5-6. He then inappropriately refers to the Motion for Rehearing that contains expansive arguments about the alleged denials of due process. Id. (citing Ex. A at 9-12, 14-17).

The Florida Supreme Court, addressing the due process argument in its suspension Order, found that Mr. Klayman "participated in every stage of the D.C. proceedings and has not shown that he was without notice or opportunity to be heard at any point in those proceedings." Fla. Order Nov. 6, 2025, at 10. Regarding the length of time issue, the Florida Supreme Court said it best:

> Klayman argues that the length of time between the underlying conduct and the initiation of disciplinary proceedings in D.C. is a grave reason for Florida not to be bound by the D.C. suspension orders. But this is a reciprocal proceeding, and D.C. has no statute of limitations for attorney discipline cases. Members of the D.C. Bar, including Klayman, are on notice that their misconduct can subject them to discipline in that jurisdiction, even decades after the underlying conduct took place. The D.C. disciplinary proceedings were therefore not conducted in an untimely manner. Because the D.C. proceedings operated in accordance with governing law, we cannot say that it would be unjust to accept the D.C. suspension orders as

> conclusive proof of Klayman's guilt, even if similar
> charges would have had to be brought sooner in a case
> arising in Florida.

Id. at 13-14; see also In re Klayman, 282 A.3d at 591-92 (findings regarding

timeliness of proceedings). As to whether the reciprocal discipline issue was

time-barred, the Florida Supreme Court found:

> Klayman argues that even if the D.C. suspension
> orders were not so defective that this Court would
> decline to accept them for purposes of reciprocal
> discipline, this Florida disciplinary proceeding is time-
> barred. He relies on Rule Regulating The Florida Bar
> 3-7.16(a) (Limitation on Time to Open Investigation),
> which generally operates as a statute of limitations for
> lawyer discipline proceedings in Florida. Rule 3-
> 7.16(a)(1) provides: "The Florida Bar must open an
> investigation initiated by The Florida Bar within 6
> years from the time the matter giving rise to the
> investigation is discovered or, with due diligence,
> should have been discovered." Notably, this case did not
> arise from a Florida Bar investigation following an
> inquiry or complaint filed by a complaining witness; it
> arose as a reciprocal discipline proceeding initiated
> because the Bar learned of Klayman's suspension in
> D.C. A Florida Bar reciprocal discipline cause of action
> does not accrue until discipline has been imposed by a
> foreign jurisdiction. This is based on the general rule in
> Florida that "[a] cause of action accrues when the last
> element constituting the cause of action occurs." §
> 95.031(1), Fla. Stat. (2023); see R.R. v. New Life Comm.
> Church of CMA, Inc., 303 So. 3d 916, 921 (Fla. 2020).
>
> In a reciprocal discipline proceeding, the elements
> constituting the cause of action are the foreign
> judgments on which the reciprocal discipline is based,
> not the underlying conduct. Given that the D.C. orders
> giving rise to the present cause of action were issued in
> 2020 and 2022, and Klayman notified the Bar of those
> orders shortly after each order was issued, this

- 15 -

> reciprocal proceeding—opened in 2023—was initiated
> in a timely manner.

Fla. Order Nov. 6, 2025, at 14-15. Mr. Klayman challenges none of these findings; instead, he relies by reference on arguments that were made to and rejected by the referee and the Florida Supreme Court. <u>See</u> Petition at 5-6. This Court has reviewed all of Mr. Klayman's arguments from the prior proceedings, finding none of them persuasive. Mr. Klayman has not shown that any of the underlying disciplinary proceedings were time-barred.

Mr. Klayman argues he was "denied discovery" in both the District of Columbia and in the Florida disciplinary proceedings before the referee. Petition at 6. According to Mr. Klayman, "discovery was necessary to address and remedy the extreme passage of time and thus avoid undue prejudice, which resulted in memories fading, records being lost and witnesses becoming unavailable to testify." <u>Id.</u> It appears Mr. Klayman is mainly referring to the 2022 DCCA opinion and proceedings with his claim that the "District of Columbia level" denied him discovery. Petition at 6.

As to the alleged purging of files, the District of Columbia Court of Appeals found Mr. Klayman had been "on notice of the disciplinary complaint by 2011 and he therefore could have been expected to retain any relevant documents until that matter was explicitly resolved." 282 A.3d at 592 (citation omitted). In addition, Mr. Klayman failed to identify for that Court what specific documents he was missing or their alleged relevance. <u>See id.</u> As to the witness

problems, the District of Columbia found "the proper function of [the proposed expert] testimony would have been limited at best"; "Mr. Klayman provided no information about any efforts he may have made to obtain a replacement expert"; and, as to the psychologist, "[the] record contains written documentation from [the psychologist] about [the client's] condition and correspondence from Mr. Klayman to [the psychologist]" which "mitigates the effect of [the psychologist's] unavailability"; and the evidence Mr. Klayman proffered he would elicit from the psychologist "does not appear to be of substantial importance." Id.

Further, in the Florida proceedings, the referee considered and duly ruled upon various discovery motions, in each providing Mr. Klayman the opportunity to be heard through his written filing and sometimes at hearings. See, e.g., Fla. Index & Record filed May 17, 2024 (containing numerous motions and rulings by referee on discovery matters). The referee made findings as to each discovery request, and Mr. Klayman does not properly challenge any of these findings in this Court. Moreover, the referee permitted Mr. Klayman to have several witnesses testify on his behalf, including an expert on bar discipline issues. See Fla. Report of Referee entered May 17, 2024. Mr. Klayman has not established that he was improperly denied "discovery" in either proceeding.

Second, Mr. Klayman argues the District of Columbia Court of Appeals and the Florida Supreme Court orders were "so infirm as to give rise to a clear

conviction" that they cannot be accepted by this Court. Petition at 6. Once again, Mr. Klayman inappropriately incorporates his arguments made in the Motion for Rehearing. Id. (citing Ex. A). Mr. Klayman contends the Florida Supreme Court "adopted virtually wholesale" the report of the referee, and there was a "cascading series of legal and factual errors that Mr. Klayman had no bona fide opportunity to remedy at any step of this proceeding." Id. at 6-7. Mr. Klayman made similar arguments before the District of Columbia Court of Appeals in relation to the 2022 DCCA proceedings, even accusing the Court itself of "prejudg[ing] this matter" and "suffer[ing] from a conflict of interest." See Klayman, 282 A.3d at 592-93. Finding that "[t]he record . . . does not support Mr. Klayman's repeated assertions of bias," the Court dismissed them. Id. Moreover, the District of Columbia hearing committee, the board, and the District of Columbia Court of Appeals made compelling factual findings on these matters, Klayman, 282 A.3d at 593-98, as did the Florida referee and Florida Supreme Court, Fla. Order Nov. 6, 2025 at 3-6, 11-13. This Court cannot revisit those findings de novo, and they firmly establish the claimed violations.

Third, Mr. Klayman argues there is "some other grave reason" to decline to impose reciprocal discipline. Petition at 7; see Calvo, 88 F.3d at 966-67. Mr. Klayman claims there has been an inappropriate "stacking" of disciplinary proceedings because the proceedings were not "timely adjudicated." Petition at

7. According to Mr. Klayman, had they been timely adjudicated, "the suspensions would have already run." Id.

Mr. Klayman's timeliness argument has already been addressed in determining the due process issue. The Court finds no "grave reason" or any other reason to decline to impose reciprocal discipline. See Calvo, 88 F.3d at 966-67.

### III. Conclusion

In sum, a stay is not warranted, and none of the reasons to decline reciprocal suspension apply here. Accordingly, Mr. Klayman is due to be suspended from the bar of this Court. After due consideration, it is

**ORDERED**:

1.     The Petition Pursuant to Local Rule 2.04 of Larry Elliot Klayman to the Chief Judge Concerning Suspension Order of the Supreme Court of Florida and Motion to Stay (Doc. No. 1) is **DENIED**.

2.     Larry Klayman is hereby **SUSPENDED** from the Bar of the United States District Court for the Middle District of Florida. If Mr. Klayman is reinstated to The Florida Bar, he may re-apply for admission to this Court's Bar.

3.     Within **ten (10) days**, Mr. Klayman shall ensure the filing of a notice in **each of his pending cases**[11] in the Middle District of Florida

---

[11]     This includes cases that are closed but in which the parties still have any

indicating he has been suspended from this Court's Bar. Mr. Klayman shall cause the notices to be served upon his clients, and he shall indicate such in the certificates of service attached to the notices.

     4.     The Clerk is directed to close the case.[12]

**DONE AND ORDERED** in Jacksonville, Florida on February 13, 2026.

James R. Klindt

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Hon. Marcia Morales Howard, Chief U.S. District Judge
All judges with pending cases or motions in which Mr. Klayman is counsel of record
Clerk of Court
Attorney Admissions Coordinator
Larry Klayman, Esquire

---

matter(s) under consideration by the Court.
    [12]    This ruling renders moot Mr. Klayman's two other disciplinary proceedings pending in this Court: 3:22-mc-14-JRK and 3:25-mc-15-JRK. Orders will enter separately so finding in each of those proceedings.